IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARIO WILLIAMS,

                    Petitioner,

v.                                                OPINION & ORDER

LOUIS WILLIAMS, II,                               17-cv-730-jdp

                    Respondent.

---

In this petition for a writ of habeas corpus under 28 U.S.C. § 1142, pro se petitioner Mario Williams, a prisoner in the custody of the Federal Bureau of Prisons (BOP) currently housed at the Federal Correctional Institution in Oxford, Wisconsin (FCI-Oxford), is challenging a prison disciplinary hearing in which the BOP stripped him of his good-conduct time. The parties have briefed the petition, but because the record is incomplete, I will order the parties to submit supplemental evidence so I may determine whether an evidentiary hearing is necessary.

ANALYSIS

I allowed Williams to proceed on a claim that he was deprived of good-time credit in violation of the Equal Protection Clause. He lost good-time credit when he was found guilty of possessing amphetamines, based on the results of a Narcotics Identification Kit (NIK). He contends that prison officials knew that the NIK test could produce false positives and as a result, they did not sanction white inmates accused of possessing amphetamines with loss of good-time credit, but that they imposed that sanction on Williams, a black inmate. To succeed on his claim, he "must demonstrate that (1) he is otherwise similarly situated to members of

the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

The parties' briefing reveals the following undisputed facts. Petitioner Mario Williams is an African-American inmate incarcerated at FCI-Oxford. On November 7, 2016, Williams received an incident report for possession of drugs in violation of Prohibition Act Code 113. The incident report indicates that "4 blue balloon type materials [were found in Williams's secure, personal locker, each containing] unknown green leafy type substance," which tested positive for amphetamines using a NIK test. Dkt. 2-2, at 1. Williams told the Unit Discipline Committee (UDC), "I did not know anything about it." *Id.* at 2. The UDC referred the charge to the Discipline Hearing Officer (DHO). At the disciplinary hearing, Williams took "responsibility for the ticket." *Id.* at 3. DHO G. Crews considered Williams's statements, the incident report, photos of the balloons, and the NIK test results and found that Williams violated Code 113. As a result, Williams lost 41 days of good-conduct time. Williams appealed, arguing that the NIK test is known to produce false positives, that the DHO has reduced, dismissed, or expunged white inmates' incident reports as a result, and that he was treated differently. The Regional Director and the National Inmates Appeals Administrator each dismissed the appeal, explaining that inmate discipline is reviewed on a case-by-case basis.

Williams points to another incident report form indicating that on September 13, 2016, Wyatt Leedy, a Caucasian inmate also incarcerated at FCI-Oxford, was also accused of possessing drugs in violation of Code 113. A correctional officer smelled smoke near Leedy's cell, found "a scratched off battery that appeared to be used for a lighter" during a pat search of Leedy, and found "a green leafy substance" in the cell that Leedy shared with another

2

inmate. Dkt. 2-2, at 19. The substance tested "positive for amphetamines." *Id.* Leedy told the UDC, "My cellie didn't have nothing to do with it. It was all mine." *Id.* The UDC referred the charge to the DHO. The incident report form ends there. Williams alleges—and respondent does not dispute—that the DHO dismissed the incident report.

Williams also alleges that a second white inmate, whose BOP register number is 13008-031 and whose last name is Gibson, received an incident report for possession of drugs in violation of Code 113, which was "expunged due to laboratory testing." *Id.* at 25. I take him to mean that the NIK test produced a positive result for amphetamines, but subsequent testing produced a negative result. Williams does not submit any evidence concerning Gibson. Respondent states that the register number listed by Williams is not associated with any federal inmate and that Gibson "apparently does not exist." Dkt. 7, at 13.

Respondent argues that even assuming Williams's allegations are true, he has not alleged facts entitling him to relief. But I already determined that Williams's allegations were not plainly without merit. *See* Dkt. 4, at 4. Respondent argues that Leedy and Gibson aren't similarly situated to Williams, but their incident reports need not be exact matches to be similarly situated. *See Chavez v. Ill. State Police*, 251 F.3d 612, 636 (7th Cir. 2001) (describing the similarly situated requirement as "a common-sense inquiry" focusing on "common features essential to a meaningful comparison" that should not be defined "too narrowly"). Without knowing more details, I can't say that Leedy and Gibson aren't similarly situated to Williams. Respondent implies that Williams would need a "DHO report [stating that] sanctions were imposed because Petitioner is black" to succeed on his claim, Dkt. 7, at 18, but direct evidence of discriminatory intent is not required. Although Williams faces a high hurdle in proving that the DHO, Regional Director, or national Inmate Appeals Administrator intentionally treated

him differently because of his race, his factual allegations allow one to infer intentional discrimination: three inmates were accused of Code 113 violations based on NIK tests; the two white inmates were not punished because the NIK test was known to produce false positives, but the one black inmate was punished.

At this point, the question is whether the material facts are in dispute, such that an evidentiary hearing is required. *See* 28 U.S.C. § 2243; Rule 8 of the Rules Governing Section 2254 Cases. Because the record is incomplete, I can't tell whether there is evidence supporting Williams's allegations. So I will order the parties to supplement the record with Leedy's and Gibson's Code 113 incident reports and their disciplinary records related to those incident reports. I will set a short deadline for Williams to provide respondent's counsel with information that will allow counsel to locate Gibson's disciplinary record, such as Gibson's first name, the approximate dates during which Gibson was incarcerated at FCI-Oxford, and the approximate date of Gibson's incident report. I will set a short deadline for respondent's counsel to file with the court Leedy's and Gibson's relevant disciplinary records, along with any other relevant evidence she wants me to consider. If counsel is unable to locate the disciplinary records, she should submit a declaration documenting the steps she took to locate them. I will also allow Williams an opportunity to submit to the court any additional evidence in support of his equal protection claim, such as evidence of any other instances of black inmates being punished based on NIK test results or white inmates not being punished despite positive NIK test results. Williams indicates that he will be eligible for placement at a halfway house soon and asks for an "expedited ruling." Dkt. 12. I will grant that motion, set short deadlines for the parties' filings, and once the record is supplemented, promptly decide whether to hold an evidentiary hearing.

ORDER

IT IS ORDERED that:

1. Petitioner Mario Williams's motion for an expedited ruling, Dkt. 12, is GRANTED.

2. By May 18, 2018, petitioner must provide respondent's counsel with information that will allow counsel to locate Gibson's disciplinary record, such as Gibson's first name, the approximate dates during which Gibson was incarcerated at FCI-Oxford, and the approximate date of Gibson's incident report.

3. By June 1, 2018, respondent must file with the court Leedy's and Gibson's relevant disciplinary records or a declaration documenting the steps taken to locate the records.

4. By June 1, 2018, petitioner must file with the court all additional evidence supporting his equal protection claim.

Entered May 4, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge